358 So.2d 1339 (1978)
GOODYEAR TIRE & RUBBER CO. and Travelers Insurance Co., Petitioners,
v.
HUGHES SUPPLY, INC., Hartford Accident and Indemnity Co., the Hanover Insurance Co. and Joseph Hale, Respondents.
DAYTON TIRE & RUBBER CO. et al., Petitioners,
v.
Clyde E. DAVIS et al., Respondents.
Nos. 50411 and 52360.
Supreme Court of Florida.
March 2, 1978.
As Corrected On Denial of Rehearings June 13, 1978.
*1340 Janis M. Halker of Gurney, Gurney & Handley, Orlando, for Goodyear Tire & Rubber Co.
L. William Graham and Joe C. Willcox of Dell, Graham, Willcox, Barber, Ryals & Henderson, Gainesville, and W.C. O'Neal of Chandler, O'Neal, Gray, Lang & Haswell, Gainesville, for Dayton Tire & Rubber Co., petitioner.
Elmo R. Hoffman of Hoffman, Hendry, Smith, Stoner & Schoder, Orlando, for Hughes Supply, Inc.
Dan H. Honeywell of Billings, Frederick, Wooten & Honeywell, Orlando, for Clyde E. Davis, respondent.
ENGLAND, Justice.
Both the Goodyear and Dayton tire companies have asked us to review district court of appeal decisions involving essentially the same set of facts and the identical point of law.[1] The availability of the reasoning of both district courts on the single legal issue suggested that we consolidate the cases for both analytical and opinion purposes.
These are personal injury cases initiated when an individual was injured while driving a motor vehicle on which a tire blew out. The tire in each case had been manufactured by the respective defendant tire company. In Goodyear's case the incident occurred after the allegedly defective tire had been in the possession and control of the plaintiff for one month, and had been driven 9,500 miles. In Dayton's case the plaintiff had been in possession and control of the tire for six months, and the tire had been driven 4,000 miles. A more complete recitation of the facts of the two occurrences, available in each of the district courts' opinions, is not essential to our review of the legal question presented.
In each case, a divided panel of the district court held that a jury instruction on the doctrine of res ipsa loquitur was properly given, in addition to other standard jury instructions, despite the fact that both parties introduced substantial expert and other evidence tending to prove or disprove negligence associated with the plaintiff's use of the tire and in the tire manufacturing process. The basis for our review is the determination by each court that the plaintiff in *1341 a controverted negligence case is entitled to the benefit of the inference which the doctrine of res ipsa loquitur provides, a proposition in direct conflict with our decision in Frash v. Sarres, 60 So.2d 924 (Fla. 1952).[2]
In Frash the plaintiff was struck by the revolving blades of an overhead fan in defendant's restaurant while attempting to open a window shutter. The facts surrounding the injuring occurrence  whirling fan blades coming in contact with the plaintiff  were not in dispute, and liability hinged on whether the fan had been turned on before or after plaintiff's attempt to open the shutter. This was a factual matter on which "there were direct conflicts in the evidence."[3] Our Court there upheld the trial court's ruling that plaintiff was not entitled to the benefit of the inference which the doctrine of res ipsa loquitur would supply. In South Florida Hospital Corp. v. McCrea, 118 So.2d 25 (Fla. 1960), we construed the Frash decision to mean that there is no room for an inference of negligence where direct evidence is adduced to reveal the circumstances surrounding the occurrence and to establish the precise cause of the plaintiff's injury.
The Frash and McCrea decisions are viewed by Goodyear and Dayton as our announcement that res ipsa loquitur is unavailable whenever a defendant introduces specific evidence tending to disprove its asserted negligence. Judges Walden and Smith, dissenting in the two cases now before us, have focused the problem in somewhat different terms. Judge Walden has isolated the factors which take this type of "exploding tire" case out of the mainstream of res ipsa loquitur cases, in particular rejecting his colleagues' acceptance of an attenuated "exclusive control" requirement for tire manufacturers. Judge Smith views the majority position in his court's case more broadly, and in developing his point he traces what he perceives to be an evolutionary departure from the basis on which the doctrine of res ipsa loquitur was first introduced into the fault system of tort liability. Both judges agree, however, that the use of a res ipsa inference in the situations presented here would essentially make it available for plaintiffs in every products liability lawsuit.
We are persuaded, after studying the able arguments of counsel and the thoughtful analyses of the law developed by all of the district court judges who considered these cases, that Judges Walden and Smith are correct in their penultimate conclusion, and that the doctrine of res ipsa loquitur has developed a judicial gloss which was never intended. Having the historical development so well presented in the opinions below, our reiteration of that history is unnecessary. The time seems propitious simply to address the dimensions of the doctrine head-on, and in so doing to restore the inference of negligence to its historically proper bounds  that is, when direct evidence of negligence is unavailable to the plaintiff due to the unusual circumstances of the injuring incident.
Res ipsa loquitur  "the thing speaks for itself"[4]  is a doctrine of extremely limited applicability. It provides an injured plaintiff with a common-sense inference of negligence where direct proof of negligence is wanting, provided certain elements consistent with negligent behavior are present. Essentially, the injured plaintiff must establish that the instrumentality causing his or her injury was under the exclusive control of the defendant, and that the accident is one that would not, in the ordinary course of events, have occurred without negligence *1342 on the part of the one in control.[5] The district courts of Florida have expanded the doctrine far beyond its intended perimeters, both by liberalizing the elements requisite to its application and by allowing the development of inferences not only as to the incident itself but also as to pre-incident acts, such as manufacture or production.
Plainly, the threshold inquiry is whether that which occurred is a phenomenon which does not ordinarily happen except in the absence of due care. The initial burden is on the plaintiff to establish that the circumstances attendant to the injury are such that, in the light of past experience, negligence is the probable cause and the defendant is the probable actor. An injury standing alone, of course, ordinarily does not indicate negligence. The doctrine of res ipsa loquitur simply recognizes that in rare instances an injury may permit an inference of negligence if coupled with a sufficient showing of its immediate, precipitating cause.[6]
In the cases now before us, persons were injured as a result of tire blowouts. Can it realistically be concluded, on the basis of previous human experience, that this "happening" does not ordinarily occur in the absence of negligence by the manufacturer? American courts have consistently, and thoughtfully, rejected that notion.[7] We, too, hold that res ipsa loquitur supplies no inference of the manufacturer's negligence in tire blowout cases, at least where the blowout has occurred after possession and some significant use by another.[8]
Not only was the use of the negligence inference inappropriate in these cases because the facts surrounding the incident were discoverable and provable, and because they were not of a nature typically suggestive of negligence by the defendants, but the inference was inappropriate because the plaintiffs in these cases failed to allege and prove the essential element of defendant's exclusive control over the injury-causing instrumentality. In Schott v. Pancoast Properties, 57 So.2d 431, 432 (Fla. 1952), we held:
"The doctrine may not be invoked unless it appear [sic] that the thing causing the injury was so completely in the control of the defendant that, in the ordinary course of events, the mishap could not have occurred had there been proper care on the defendant's part."
In the two cases before us, the evidence presented to establish the tire companies' sole control was wholly insufficient. Given the time of plaintiffs' control over the tires and the extent of their usage, it is impossible to assert that the tire companies had "exclusive control" at the time of the injuries.
We recognize that there are exceptions to the exclusive control requirement in Florida. Each is supported, however, *1343 by a justifiable basis for inferring that the cause of injury was probably the defendant's negligence.[9] It is untenable to suggest that anything inherent in the product warrants creating an exception for automobile or truck tires once they have left the manufacturer's possession and have been put to their intended use.
We agree with Judge Smith that to allow the use of res ipsa loquitur in the present cases, where the plaintiffs neither satisfied the essential elements of the doctrine nor demonstrated an inaccessibility to evidence of the occurrence, is to recognize res ipsa loquitur as but
"a finishing stroke, administered by the charging judge, in a plaintiff's case which is built step by step until the last on ordinary circumstantial evidence that defendant was negligent and [plaintiff] was not."[10]
The decisions of the Fourth and First District Courts of Appeal are quashed, and these cases are remanded for further proceedings consistent with this opinion.[11] To the extent that other Florida decisions are in conflict with these views,[12] they are disapproved.
It is so ordered.
OVERTON, C.J., and BOYD, SUNDBERG and HATCHETT, JJ., concur.
ADKINS, J., dissents.
NOTES
[1] Goodyear Tire & Rubber Co. v. Hughes Supply, Inc., 336 So.2d 1221 (Fla. 4th DCA 1976); Dayton Tire & Rubber Co. v. Davis, 348 So.2d 575 (Fla. 1st DCA 1977).
[2] Art. V, § 3(b)(3), Fla. Const.
[3] 60 So.2d at 926.
[4] Dean Prosser has suggested that the Latin label has created confusion in the cases to which the doctrine is applied. "Along with res gestae and other unhappy catchwords, the Latin tag should be consigned to the legal dustbin." Prosser, The Procedural Effect of Res Ipsa Loquitur, 20 Minn.L.Rev. 241, 271 (1936). Lord Shaw, in Ballard v. North British R.R., [1923] Sess.Cas., H.L., 43, opined that "[i]f that phrase had not been in Latin, nobody would have called it a principle."
[5] DeMoss v. Darwin T. Lynner Constr. Co., 159 N.W.2d 463 (lowa 1968). See Frash v. Sarres, 60 So.2d 924 (Fla. 1952); American Dist. Elec. Protective Co. v. Seaboard Air Line Ry., 129 Fla. 518, 177 So. 294 (1937); W. Prosser, Law of Torts § 39, at 214 (4th ed. 1971).
[6] This requirement is not satisfied, however, by the plaintiff's allegations and proof of specific acts of negligence. As one court explained:

"When the facts and circumstances from which the jury is asked to infer negligence are those immediately attendant on the occurrence, we speak of it as a case of res ipsa loquitur; when not immediately connected with the occurrence, then it is an ordinary case of circumstantial evidence."
Sand Springs Park v. Schrader, 82 Okla. 244, 248, 198 P. 983, 987 (1921), quoting from Griffen v. Manice, 166 N.Y. 188, 196, 59 N.E. 925, 927 (1901).
[7] See, e.g., Shramek v. General Motors Corp., 69 Ill. App.2d 72, 216 N.E.2d 244 (App.Ct. 1966); Wojciuk v. United States Rubber Co., 19 Wis.2d 224, 120 N.W.2d 47, modified, 122 N.W.2d 737 (1963). See also Restatement (Second) of Torts § 328d, at 158 (1965).
[8] It is conceivable that res ipsa loquitur would be appropriate in some situations involving tire malfunctions, as where one is injured by a new tire which explodes while being mounted for the first time. See the cases cited in Judge Smith's dissent below in Dayton. 348 So.2d at 587.
[9] In the line of "exploding bottle" cases, such as Starke Coca-Cola Bottling Co. v. Carrington, 159 Fla. 718, 32 So.2d 583 (1947), plaintiffs were injured by an exploding bottle which had left the control of the bottler. The applicability of res ipsa loquitur in suits against the bottler requires that the plaintiff make an affirmative showing "that the bottle after it left possession of the bottler was not subjected to any unusual atmospheric changes, or changes in temperature, or that it was not handled improperly up to the time of the explosion." Starke Coca-Cola Bottling Co. v. Carrington, 159 Fla. at 721, 32 So.2d at 585. In Yarbrough v. Ball U-Drive Sys., Inc., 48 So.2d 82 (Fla. 1950), the Court analogized to the "exploding bottle" cases where severe injuries were incurred by reason of a mechanical failure of a truck recently rented from the defendant as part of his rental business. The Court concluded that the element of control was satisfied under these particular circumstances. The same situation could occur in an "exploding tire" case, of course. See note 8 above.
[10] Dayton Tire & Rubber Co. v. Davis, 348 So.2d 575, 587 (Fla. 1st DCA 1977) (Smith, J., concurring and dissenting).
[11] Obviously, our decision on res ipsa loquitur with respect to the Dayton case does not bear in any way on the other issues passed upon by the district court.
[12] Among these are Auto Specialties Mfg. Co. v. Boutwell, 335 So.2d 291 (Fla. 1st DCA), cert. dismissed, 341 So.2d 1080 (Fla. 1976); Cortez Roofing Inc. v. Barolo, 323 So.2d 45 (Fla. 2d DCA 1975); Kulczynski v. Harrington, 207 So.2d 505 (Fla. 3d DCA 1968); National Airlines, Inc. v. Fleming, 141 So.2d 343 (Fla. 1st DCA 1962).